**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CLINTON SPELLMAN, JOHN ZIGLAR, MARCUS WELCH, SR., OWEN THURMAN, DANIEL BUSTOS, JEAN DENDE, SUNDAY CHIMEZIE, ELMUTHANA BASHIER, JEFFREY GRIFFIN, WILLIAM HAMMOND, and ABDUL MUKHNI, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) | Case No.: 1:09-CV-01666-RMC |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| AMERICAN EAGLE EXPRESS, INC. d/b/a AEX GROUP, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |
| AMERICAN EAGLE EXPRESS, INC. d/b/a AEX GROUP, | ) ) ) | |
| Counterclaim Plaintiff, | ) ) | |
| v. | ) ) | |
| CLINTON SPELLMAN, DANIEL BUSTOS, SUNDAY CHIMEZIE, ELMUTHANA BASHIER, JEFFREY GRIFFIN, WILLIAM HAMMOND, and ABDUL MUKHNI, | ) ) ) ) ) | |
| Counterclaim Defendants. | ) | |

**AEX GROUP'S MEMORANDUM OF POINTS AND AUTHORITIES IN**
**OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS**

Defendant American Eagle Express, Inc. d/b/a AEX Group ("AEX Group"), by counsel

and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7(b),

hereby responds to the Motion to Dismiss Defendant's Counterclaim ("Motion") filed by Clinton

Spellman, Daniel Bustos, Sunday Chimezie, Elmuthana Bashier, Jeffrey Griffin, William Hammond, and Abdul Mukhni (collectively "Counterclaim Defendants").[1]

## INTRODUCTION

On November 24, 2009, Counterclaim Defendants filed their Motion requesting dismissal of AEX Group's counterclaim on the basis that the Fair Labor Standards Act ("FLSA") does not allow an employer to force employees to indemnify it for its own FLSA violations. Two unsound presumptions undergird Counterclaim Defendants' Motion. First, Counterclaim Defendants presume that they have already overcome the need to establish they are something other than independent contractors and are instead employees subject to the protections of the FLSA. Second, Counterclaim Defendants presume AEX Group seeks indemnification for its own actions when in fact, AEX Group seeks only to recover under the contractual provisions between the parties to the extent Counterclaim Defendants are exactly what they have represented themselves to be – independent contractors. Counterclaim Defendants then rely on case law that applies only to the extent the above presumptions have already been proven. Because Counterclaim Defendants' presumptions are incorrect, the Motion should be denied.

## BACKGROUND

AEX Group entered into written Leases with each of the Counterclaim Defendants, and each Lease contains the same indemnity provision as the one found in the Lease between AEX

---

[1] The Motion was filed on behalf of all "Named-Plaintiffs." (*See* Doc. No. 16-2 at 1.) However, AEX Group has asserted a counterclaim against only 7 of the 11 Plaintiffs. (*See* Doc. No. 9 at 11.) Because no counterclaim has been asserted against John Ziglar, Marcus Welch, Sr., Owen Thurman, or Jean Dende, those Plaintiffs have no standing to assert any defenses on behalf of Counterclaim Defendants. Thus, for purposes of this Memorandum, AEX Group will refer to the arguments raised in the Motion as being advanced by Counterclaim Defendants only.

Group and Spellman. (*See* Doc. No. 9 at 12; Doc. No. 9-1 at 1-9.)[2] The Leases contain identical indemnity provisions, stating in relevant part that Counterclaim Defendants agree to:

> defend, indemnify and hold harmless BROKER from any direct, indirect and consequential loss, damage, fine, expense, including reasonable attorneys' fees, action, claim for injury to persons, including death, and damage to property which BROKER may incur arising out of or in connection with the operation of the Equipment, CONTRACTOR's obligations under this Agreement, or any breach by CONTRACTOR or its drivers or workers of the terms of this Agreement. This provision shall remain in full force and effect both during and after the termination of this Agreement.

Spellman Lease ¶ 10 (Doc. No. 9-1 at 4). The term "BROKER" refers to AEX Group, and the term "CONTRACTOR" refers to each individual Counterclaim Defendant. (AEX Group's Countercl. ¶ 7 (Doc. No. 9 at 13); Spellman Lease ¶ 1 (Doc. No. 9-1 at 1).) This broad language captures all claims asserted by Counterclaim Defendants against AEX Group in this case, as they all "arise out of" Counterclaim Defendants' contractual relationship with AEX Group. (AEX Group's Countercl. ¶ 8 (Doc. No. 9 at 13).) At all times, Counterclaim Defendants were independent contractors of AEX Group, not employees. (*See* AEX Group's Answer ¶ 7 (Doc. No. 9 at 2); AEX Group's Aff. Defs. ¶ 1 (Doc. No. 9 at 9); AEX Group's Countercl. ¶ 9 (Doc. No. 9 at 13).)[3]

---

[2] The Court must accept as true the facts pled in AEX Group's Counterclaim. *See Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (in deciding a motion to dismiss, "the court must assume all the allegations in the complaint are true"); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, No. 08-0721, 2009 U.S. Dist. LEXIS 115127, at *4 (D.D.C. Dec. 10, 2009) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

[3] Counterclaim Defendants suggest that the uniformity of the indemnity provisions somehow proves that the Leases were "not subject to negotiation" or that they are "contracts of adhesion," (Doc. No. 16-2 at 16-17.) These are bald allegations with no factual support that should be disregarded by the Court in ruling on this Motion. *See Antonelli v. Fed. Bureau of Prisons*, 591 F.Supp.2d 15, 29 (D.D.C. 2008) (disregarding "plaintiff's bald assertions"); *United States v. Funds from Prudential Sec.*, 362 F.Supp.2d 75, 82 (D.D.C. 2005) (disregarding statements made by party where she failed to "set forth any facts with specificity to support her bald assertions, nor provide any factual evidence whatsoever").

## ARGUMENT

The central question in this case is whether Counterclaim Defendants, classified by AEX Group as independent contractors, should be reclassified by the Court as employees. This question is central because Counterclaim Defendants' claims arising under the FLSA and three state labor statutes must be dismissed to the extent that AEX group has properly classified them as independent contractors. In their Motion, as in their Amended Complaint,[4] Counterclaim Defendants simply start with the yet to be established proposition they are employees, as though nothing more needs to be said or proven on the matter. Contrary to Counterclaim Defendants' presumption, it is without question that, in ruling on this Motion to Dismiss, the Court must take as true AEX Group's Counterclaim allegations, which particularly in light of the Lease attached to the counterclaim, shows Counterclaim Defendants are independent contractors. On these facts, all of which Counterclaim Defendants simply bypass, there is no prohibition against AEX Group enforcing the Transportation Brokerage Agreements ("Leases")[5], including those provisions obligating Counterclaim Defendants to indemnify AEX Group for losses arising out of the Leases.[6]

Broadly speaking, Counterclaim Defendants advance three arguments in support of dismissal. First, they contend that the FLSA preempts counterclaims for indemnity by

---

[4] The Named Plaintiffs, including Counterclaim Defendants, filed their Amended Complaint on December 22, 2009. (*See* Doc. No. 23.)

[5] The Lease for Spellman was attached to the Answer, Affirmative Defenses, and Counterclaim filed by AEX Group, and it details the relationship between the parties as that of an independent contractor. (*See* Doc. No. 9-1 at 1-4.)

[6] Should the Court determine that the Counterclaim Defendants are employees subject to the FLSA, AEX Group would disclaim any right to enforce the indemnity provisions contained in the contracts, a point made in AEX Group's Counterclaim at ¶ 9 ("*If the Court ultimately finds the Leases to be enforceable and that Counterclaim-Defendants are independent contractors*, AEX Group is entitled to a judgment enforcing Paragraph 10 and other terms of the Leases, including an award of all costs and expenses, including reasonable attorney fees, incurred by AEX Group in defending against Counterclaim-Defendants' Complaint.") (Doc. No. 9 at 13) (emphasis added). The undersigned also made this commitment in writing to opposing counsel prior to the filing of this Motion.

employers against employees.   Although AEX Group does not quarrel with this general proposition, the argument fails because Counterclaim Defendants are not employees and the FLSA does not apply to them.   Second, Counterclaim Defendants argue that the policy embodied in the FLSA renders the indemnity provisions of the Leases they signed unenforceable as contrary to public policy.   This argument not only fails for the same reason as the first, but also because there is no support for Counterclaim Defendants' contention that a single reference to "workers" in the opening policy provision of the FLSA somehow expands the FLSA's protections to employees and independent contractors alike.

Third, Counterclaim Defendants argue that the claims they have asserted in this lawsuit do not "arise out of" their Leases because the Leases do not expressly provide for the indemnity of AEX Group's own actions.   This argument fails because AEX Group is not seeking indemnity for its own actions.   Indeed, if AEX Group is found liable for damages, the Counterclaim will be rendered moot.   Instead, the broad language of the indemnity provision captures any dispute having its origin in the Lease, including a dispute about whether the Leases' characterization of Counterclaim Defendants as independent contractors is proper.   Quite simply, if Counterclaim Defendants are indeed properly classified as independent contractors, their own actions (not the actions of AEX Group) give rise to indemnity.

In sum, if AEX Group, through the Leases, has properly classified Counterclaim Defendants as independent contractors (which fact the Leases show to be true and which Counterclaim Defendants bear the burden of overcoming), the FLSA does not apply, and the indemnity provisions may be enforced.   Counterclaim Defendants' arguments in favor of dismissal turn a blind eye to these considerations, apart from finding virtually no support in the

cases they have cited.  The Court should deny their Motion and permit AEX Group to enforce its contractual rights.

I.      **AEX GROUP'S RIGHT TO CONTRACTUAL INDEMNIFICATION IS NOT PREEMPTED BY THE FLSA BECAUSE COUNTERCLAIM DEFENDANTS ARE NOT "EMPLOYEES" UNDER THAT STATUTE.**

   A.      **Counterclaim Defendants Are Not "Employees" Under the FLSA.**

Counterclaim Defendants argue that AEX Group may not assert a claim for contractual indemnification because, in enacting the FLSA, Congress preempted the field of minimum wages and overtime pay, such that no party sued under the FLSA may seek indemnity from the plaintiff, even if the plaintiff's claim is later shown to be meritless.  (*See* Doc. No. 16-2 at 9-11.) This argument entirely misunderstands AEX Group's position in this case, and ignores the fact that Counterclaim Defendants bear the burden of proving the existence of an employment relationship between them and AEX Group before the FLSA even applies.  *See Doe v. Cin-Lan, Inc.*, No. 08-CV-12719, 2008 U.S. Dist. LEXIS 107802, at *16 ( E.D. Mich. Nov. 20, 2008) (court notes that, in order for the plaintiff to prove her FLSA retaliation claim, she must show that: "(1) defendants took actions constituting discrimination after [the plaintiff] filed her lawsuit; and (2) *she is an employee*." *Id.* at *16 (emphasis added).

AEX Group is not Counterclaim Defendants' employer under the FLSA and therefore is not subject to that statute's requirements.  Similarly, Counterclaim Defendants are not employees under the FLSA and therefore are not able to recover anything under the statute.  *See Baker v. Dataphase, Inc.*, 781 F. Supp. 724, 735 (D. Utah 1992) (dismissing FLSA overtime claim after finding worker to be an independent contractor under "economic realities" test).  These facts, pled in AEX Group's Counterclaim and shown through Spellman's Lease (Doc. No. 9 at 12-14), must be taken as true.  *See Aktieselskabet*, 525 F.3d at 17; *Guantanamera Cigar Co., S.A.*, 2009

U.S. Dist. LEXIS 115127, at *4. Because the FLSA does not apply to this case, it cannot therefore serve as a basis for "preempting" AEX Group's contractual indemnity claims.[7]

The cases cited by Counterclaim Defendants, at best, fail to support their position, and at worst, are misleading. In each of those cases, there was no question that the plaintiff was an employee and the defendant's liability for violating the FLSA was already established. *See Herman v. RSR Sec. Services*, 172 F.3d 132, 144 (2d Cir. 1999) ("[T]here is no right to contribution or indemnification for *employers* held *liable* under the FLSA."); *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. N.C. 1992) ("Food Lion sought to indemnify itself against Tew *for its own violation of the FLSA*, which the district court found, and we agree, is something the FLSA simply will not allow."); *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir. 1986) ("No cause of action for indemnity by an employer against its employees *who violate the Act* appears in the statute."); *Gustafson v. Bell Atl. Corp.*, 171 F.Supp.2d 311, 328 (S.D.N.Y. 2001) (after holding that the defendant was liable for violating the FLSA, the court observes "there is no right to contribution or indemnification for employers *held liable under the FLSA* . . . .") (quoting *Herman*); *Finke v. Kirtland Cmty. College Bd. of Trs.*, 359 F.Supp.2d 593, 600 (E.D. Mich. 2005) ("[T]here is no right to contribution or indemnification for *employers* held *liable* under the FLSA.") (quoting *Herman*) (emphasis added to all).[8]

---

[7] There can be no question that the FLSA does not preempt the entire field of minimum wage and overtime pay legislation given the multitude of state minimum wage and overtime pay statutes with which it has long coexisted. As noted by the Fourth Circuit in a case alleging that certain provisions of North Carolina law conflicted with the FLSA and were thus preempted, "[t]here is no question that express preemption and field preemption are inapposite to this dispute." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 (4th Cir. 2007).

[8] This is true to the extent the numerous cases cited by the Counterclaim Defendants have any relevance to the issues presented by their Motion. Several do not. *See, e.g., Hale v. Arizona*, 993 F.2d 1387, 1395 (9th Cir. 1993) (holding that the FLSA does not apply to inmates employed in state prisons) (cited in the Counterclaim Defendant's Motion at 5 n.2) (Doc. No. 16-2 at 10 n.2).

As an example of the serious over-reaching, one case relied on by Counterclaim Defendants squarely contradicts their position.  In *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405 (10th Cir. 1992), the Secretary of Labor brought suit against Gingerbread House, Inc. and its owners under the FLSA alleging unlawful retaliation against employees of Gingerbread House.  *Id.* at 1406.  The Secretary argued that the defendants unlawfully filed a third-party complaint seeking indemnity from four employees, and that defendants discharged one of the employees in retaliation for the cooperation she gave to the Department of Labor.  *Id.*  The district court found neither action to be unlawful retaliation.  *Id.*

On appeal, the Secretary argued that "third-party complaints for indemnity in FLSA cases are baseless because they are preempted by the Supremacy Clause."  *Id.* at 1407.  The Tenth Circuit refused to side with the Secretary and instead held that the district court was correct in permitting the defendant to litigate the indemnity claim because it was not baseless:

> We hold that the filing of the third party complaint for indemnity was not baseless as a matter of fact or law. . . . We affirm the district court's conclusion that the filing of the third party complaint was not unlawful retaliation under the FLSA.

*Id.* at 1408.  Thus, under *Gingerbread House*, a claim for indemnity asserted by a defendant in an FLSA case against its own employees is permissible so long as it is neither "baseless as a matter of fact or law."  Such is the case here.  At least the Court must assume the truth of the allegations in that regard set forth in AEX Group's Counterclaim.

Further, Counterclaim Defendants' argument that the indemnity provision improperly shifts fees is misplaced.  (*See* Doc. No. 16-2 at 12.)  Whatever the merits of Counterclaim Defendants' argument should the FLSA apply, the facts laid out in AEX Group's Counterclaim show that the FLSA does not apply due to the independent contractor status of Counterclaim

Defendants.[9]  The Court must assume that Counterclaim Defendants are *not* employees and do *not* have valid FLSA claims.  (*See* Doc. No. 9 at 9, 13.)  Consequently, Congress's decision to award prevailing plaintiffs legal fees under the FLSA has no bearing whatsoever on whether the prevailing party in this case is entitled to legal fees.  That question is a matter of the leases Counterclaim Defendants entered into with AEX Group, and those leases plainly entitle AEX Group to indemnification from Counterclaim Defendants for such costs.

Counterclaim Defendants also argue that the fee-shifting component of the indemnity provision is unenforceable because "the FLSA only provides for 'plaintiffs' to receive from a 'defendant' attorneys fees and costs should they prevail – not the other way around."  (Doc. No. 16-2 at 10-11, 17 (citing 29 U.S.C. § 216(b)).  Counterclaim Defendants misleadingly culled two words out of the provision they cite.  Section 216(b) provides that the Court may award fees to the plaintiff in "such action," which is defined earlier in that very same provision as "[a]n action . . . maintained against any *employer* (including a public agency) in any Federal or State court of competent jurisdiction by any one or more *employees* for and in behalf of himself or themselves and other *employees* similarly situated."  29 U.S.C. § 216(b) (emphasis added).  Counterclaim Defendants essentially ask the Court to read certain portions of Section 216(b) in isolation, contrary to a longstanding canon of statutory construction.  *See Stafford v. Briggs*, 444 U.S. 527,

---

[9] Counterclaim Defendants' assertion that their claims are not made in bad faith is debatable.  They signed leases plainly stating they were independent contractors.  (*See, e.g.*, Doc. No. 9-1 at 1-9.)  As noted in *Horner*, a case they cite, a defendant may be able to recover fees under certain federal statutes if the plaintiff's claim is "devoid of merit or otherwise reflective of bad faith."  (Doc. No. 16-2 at 11.)  At the least, AEX Group expects the evidence to show their claims are "devoid of merit."  Moreover, contrary to the Counterclaim Defendants' suggestion, AEX Group's decision not to file a motion to dismiss does not "demonstrate[]" that their claims were made in good faith.  (Doc. No. 16-2 at 11 n.4.)  Counterclaim Defendants offer no authority in support of this argument, and at least one federal court has expressly rejected it.  *See Y.J.Sons & Co. v. Anemone, Inc. (In re Y.J.Sons & Co.)*, 212 B.R. 793, 808 (D.N.J. 1997) ("Appellants point to no authority for their argument that Galen should be precluded from moving for sanctions because it did not move to dismiss the Petition.  Accordingly, this argument is rejected.").

535 (1980) ("[I]t is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words will be used, but will take in connection with it the whole statute . . . ."). Thus, in asserting its counterclaim, AEX Group is not seeking to contradict the edicts of Congress as embodied in the FLSA, but instead seeking to enforce the arms-length bargain it struck with each of the Counterclaim Defendants.

**B.      Past Enforcement of Contract Breach Counterclaims Under the FLSA Eviscerates Counterclaim Defendants' Preemption Argument.**

Further weakening Counterclaim Defendants' preemption argument, federal courts have allowed employers to assert counterclaims for breach of contract against employees bringing FLSA claims so long as the counterclaim is compulsory and not baseless.  *See Kentisch v. Madahcom*, 566 F.Supp.2d 1343 (M.D. Fla. 2008); *Ergo v. Int'l Merchants Svcs.*, 519 F.Supp.2d 765 (N.D. Ill. 2007).  In *Kentisch*, an employer was sued for unpaid overtime compensation and counterclaimed seeking payment of business-related expenses charged by the employee to a commercial credit card pursuant to the terms and conditions of a company credit card agreement between the employer and employee.  The counterclaim was for breach of contract.  The plaintiff alleged that the counterclaim had been brought in retaliation for the plaintiff's lawsuit to recover unpaid overtime and moved to amend the complaint to include a claim for retaliation.  The Middle District of Florida allowed the counterclaim for breach of contract to stand and denied the plaintiff's motion for leave to file an amended complaint to include a retaliation claim.  In doing so, the court noted the importance of the employer's access to courts and the employer's right to petition under both federal and state law.

Similarly, in *Ergo*, the Northern District of Illinois refused to find that an employer's compulsory counterclaim for breach of contract against an employee constituted retaliation under the FLSA, reasoning:

The filing of a compulsory counterclaim is a particularly unlikely basis for a retaliation claim for a number of reasons: the FLSA plaintiff will have already asserted his or her rights, it will not cause the plaintiff to hire a lawyer or incur significant additional expenses, and (most significantly) the Defendant must bring compulsory counterclaims or risk waiving them.  Indeed, the only circumstance in which the filing of a compulsory counterclaim might constitute retaliation is where the counterclaim is totally baseless. . . . Especially since an employer that fails to assert legitimate claims against an employee arising from the same transaction as the employee's FLSA complaint would waive those claims, the threshold for concluding that a compulsory counterclaim is retaliatory should be high.

519 F.Supp.2d at 780-81 (citations omitted).   Thus, in both *Kentisch* and *Ergo*, the courts

permitted compulsory counterclaims for breach of contract against employees asserting FLSA

claims.   So here, AEX Group's claim that Counterclaim Defendants have breached their

indemnity obligations under their leases is permissible under the FLSA.[10]

## II.   NO PUBLIC POLICY RENDERS UNENFORCEABLE THE CONTRACTS COUNTERCLAIM DEFENDANTS ENTERED INTO WITH AEX GROUP.

Counterclaim Defendants argue that the contracts they entered into with AEX Group are

unenforceable as against public policy under District of Columbia law.  (*See* Doc. No. at 12-24.)

As a preliminary matter, AEX Group notes that each contract contains an identical choice-of-law

provision stating, in relevant part:

This Agreement shall be deemed to have been drawn in accordance with the statutes and laws of the State of Pennsylvania and in the event of any disagreement or litigation, the laws of this state shall apply . . . .

Doc. No. 9-1 at 9 (Spellman Lease at 9).   Courts in the District of Columbia generally enforce

such provisions.   *See United States ex rel. Tenn. Valley Marble Holding Co. v. Grunley Constr.*,

433 F.Supp.2d 104, 109 (D.D.C. 2006) (citing *Casco Marina Dev. V. M/V Forrestall*, 384

---

[10] Because Counterclaim Defendants filed a lawsuit alleging they were misclassified, AEX Group's counterclaim for indemnity stemming from the contracts giving rise to this dispute was compulsory.  *See* Fed. R. Civ. P. 13(a); *Capitol Hill Group v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 492 (D.C. Cir. 2009).  Thus, AEX Group had to file its counterclaim, or else face allegations of waiver from the Counterclaim Defendants when the claim is brought in the future.

F.Supp.2d 154, 160 (D.D.C. 2005); *Godbey v. Basil*, 603 F. Supp. 775, 776 (D.D.C. 1985)). Counterclaim Defendants' failure to acknowledge the choice-of-law provision or cite Pennsylvania law to the Court in connection with their public policy argument renders that argument unsupported by cases bearing jurisdictional relevance and thus unpersuasive.

Regardless, the public policy argument fails on its merits. First, the public policy behind the FLSA does not render unenforceable the indemnity provisions in the leases for the same reason that the FLSA does not preempt AEX Group's counterclaim; it simply does not apply to independent contractors or the contracts they voluntarily sign, like those at issue here. Second, Counterclaim Defendants' suggestion that permitting AEX Group's counterclaim to be litigated will discourage classwide participation in the FLSA claim is inapposite because the Counterclaim simply seeks to enforce the bargain the independent contractors struck with AEX Group. The indemnity provisions are not void as against public policy.

> **A.    The Public Policy Behind the FLSA Does Not Abolish the Concept of Indemnity in All Independent Contractor Relationships.**

Counterclaim Defendants argue that Congress's use of the term "workers" in the FLSA's declaration of policy (28 U.S.C. § 202(a)), as opposed to the term "employees," means that the statute's reach extends to both employees *and* independent contractors. (Doc. No. 16-2 at 12-14.) As a preliminary matter, courts may not use a declaration of policy to expand, restrict, or in any way alter the express terms chosen by Congress to carry out that policy as reflected in the statute to which the declaration relates. *See Colorado Interstate Gas Co. v. Fed. Power Com.*, 324 U.S. 581, 596 (1945); *Lauf v. E. G. Shinner & Co.*, 303 U.S. 323, 330 (1938); *Florida Nat'l Guard v. Fed. Lab. Relations Auth.*, 699 F.2d 1082, 1087 (11th Cir. 1983). Moreover, it is without question that the FLSA is inapplicable to independent contractors. *See Baker*, 781 F. Supp. at 733 (FLSA does not apply to independent contractors). Therefore, Counterclaim

Defendants' argument that 28 U.S.C. § 202(a) expands the protections afforded by the FLSA to non-employees should be flatly rejected.

Regardless, the term "workers" does not bear the significance they claim.   Unlike "employee" and "independent contractor," the term "worker" is used pragmatically by courts as a generic description of a person who has *not yet* been placed into one of those two legally cognizable categories.   *See United States v. Silk*, 331 U.S. 704, 712 (1947) ("not . . . all who render service to an industry are employees").   This is apparent in the cases Counterclaim Defendants cite in support of their position.   (*See* Doc. No. 16-2 at 13 n.7.)   What is missing from their argument is a citation to even one case holding that the public policy of the FLSA renders enforceable an indemnity provision in an independent contractor agreement.   Because that is the import of their argument: if they are correct that the public policy of the FLSA renders unenforceable indemnity provisions agreed to by all "workers," employees and independent contractors alike, then the reporters should be full of cases invalidating indemnity provisions in independent contractor agreements, even in cases that do not arise under the FLSA.   But they are not, and Counterclaim Defendants' failure to cite even one case reaching this holding is ample proof that their argument has no support.

To the contrary, federal courts construing the FLSA, including the Supreme Court, have routinely acknowledged that Congress intended its protections to extend to employees, not independent contractors.   *See Tennessee Coal, Iron and Railroad Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602-03 (1944) ("Congress intended . . . to achieve a uniform national policy of guaranteeing compensation for all work or employment *engaged in by employees* covered by the [FLSA].") (emphasis added); *Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 801 (D.C. Cir. 1983) ("The [FLSA] established minimum hourly wages for *employees*, limited

13

the number of hours *employees* could work without receiving overtime compensation, and prohibited oppressive child labor.") (emphasis added); *Marshall v. Hamburg Shirt Corp.*, 577 F.2d 444, 446 (8th Cir. 1978) ("A fundamental purpose of the [FLSA] was to encourage employers to distribute work among a larger number of *employees* rather than to work *employees* overtime.") (emphasis added).

Lacking on-point authority, Counterclaim Defendants argue that *Gustafson v. Bell Atl. Corp.*, 171 F.Supp.2d 311 (S.D.N.Y. 2001), supports their position.  In *Gustafson*, the plaintiff asserted claims arising under the FLSA and other statutes.  The Southern District of New York first held "that plaintiff was an employee of the Company for FLSA purposes."  *Id.* at 326.  With respect to the defendant's contractual indemnification claim, the Court subsequently held that the defendant "has no right to indemnification for damages assessed under the FLSA."  *Id.* at 328 (citing *Herman*, 172 F.3d at 144).  Thus, *Gustafon* stands for the unremarkable proposition that an employer found liable under the FLSA may not seek indemnity from its employee; it does not support a broad public policy abolishing all indemnity provisions in independent contractor agreements.  That the Court did not resolve the indemnity issue until after finding the plaintiff to be an employee actually supports AEX Group's position that it would be premature, at this early stage of litigation, to dismiss the indemnity counterclaim before a determination of Counterclaim Defendants' employment status is made.

Similarly inapposite is *Villareal v. El Chile, Inc.*, 601 F.Supp.2d 1011 (N.D. Ill. 2009), another case relied on by Counterclaim Defendants.  In *Villareal*, the plaintiffs asserted a class action for allegedly unpaid overtime and minimum wages under the FLSA.  *Id.* at 1013.  It was undisputed that the plaintiffs were employees.  *Id.*  The defendants asserted a counterclaim for *implied* indemnity under Illinois common law; it appears that there were no contracts between

the plaintiffs and the defendants.  The Northern District of Illinois dismissed the defendant's counterclaim for implied indemnity, noting the general rule that an employer may not seek indemnity from its employees.  *Id.* at 1015-16 (citing *Herman*, *Lyle*, and *Lecompte*).  *Villareal* is thus distinguishable on two grounds.  First, the plaintiffs were admittedly employees protected by the FLSA, and, second, they sought implied indemnity under the common law of Illinois, not contractual indemnity under a contract into which they voluntarily entered.  Moreover, even if an employee is exempt from the minimum wage and overtime provisions of the FLSA, he is still protected from retaliation under 29 U.S.C § 215(a)(3), and therefore entitled to protections under the FLSA that independent contractors are not.  *Villareal* simply does not support a broad public policy abolishing all indemnity provisions in independent contractor agreements.

Likewise, the last case upon which Counterclaim Defendants rely in this regard, *Local 1035, Int'l Brotherhood of Teamsters v. Pepsi Allied Bottlers, Inc.*, 99 F.Supp.2d 219 (D. Conn. 2000), fails to support dismissal.  In that case, the Plaintiff asserted claims arising under the FLSA and its Connecticut state law counterpart asserted by 25 employees and their collective bargaining unit against a soft-drink distributor.  The contract between the union and the distributor contained an indemnity provision which served as the basis for a counterclaim against the union (but not the plaintiffs) asserted by the distributor.  The union moved to dismiss the counterclaim, and the District of Connecticut granted its motion:

> [A] holding that the indemnification clause is enforceable would indeed mean that employers would have little reason to be concerned over whether labor agreements comply with the statutorily mandated and unwaivable overtime pay requirements of the FLSA, knowing full well that if they are later found to have violated such requirements, such employers would be totally compensated for any injuries resulting from such action, and . . . if the employer is found guilty of violating the FLSA, and the indemnification clause is enforced, the union would utilize funds collected as dues from the plaintiffs themselves in order to satisfy the judgments, thereby making the individual employees, whom the statute was designed to protect, pay for the wrongful acts of another.

15

*Id.* at 121.  Again, *Pepsi* fails to forward Counterclaim Defendants' argument because the plaintiffs were admittedly employees subject to the FLSA.  In addition, the Defendant sought indemnification for its own liability, and any indemnity obligation owed by union would indirectly be paid from the employees' union dues.  These facts and equitable considerations are simply not present here, as there is no employment relationship and AEX Group is not seeking indemnity for its own actions.[11]

In sum, Counterclaim Defendants have not proven the existence of a broad public policy abolishing all indemnity provisions in independent contractor agreements.  The FLSA's declaration of policy cannot be stretched to cover more than the statute's express terms cover, and it is beyond question that those terms do not extend to independent contractors.  Moreover, Counterclaim Defendants have failed to cite authority supporting their position, as each of the many cases they have cited are readily distinguishable on one if not more bases.

**B.      Public Policy Supports enforcing the Terms of a Written Business Agreement Between Consenting Parties.**

Alternatively, Counterclaim Defendants argue that giving effect to the indemnity provisions would discourage independent contractors from bringing claims under the FLSA because they might face liability for the defendant's legal fees and costs if their claims are unsuccessful.  (Doc. No. 16-2 at 17-19.)  As a preliminary matter, Counterclaim Defendants are

---

[11] Counterclaim Defendants cite *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288 (1960), for the proposition that "Congress chose to rely upon private individuals like Named-Plaintiffs to enforce the Act and not direct government oversight . . . ."  (Doc. No. 16-2 at 13.)  While employees are allowed to bring suit under the FLSA, principal enforcement authority resides with the Secretary of Labor, who is empowered to investigate and gather data regarding wages, hours, and other conditions of employment to determine whether an employer is violating the statute, and to subpoena witnesses and documentary evidence relating to any matter under investigation.  *See Donovan v. Lone Steer*, 464 U.S. 408, 410 (1984); *see also Gonzales v. Oregon*, 546 U.S. 243, 256 (2006) (describing the FLSA as "a statutory scheme the Secretary of Labor was charged with enforcing").

independent businessmen and women who entered into a commercial arrangement with AEX Group governed by the Leases they signed.  Courts routinely enforce indemnity agreements between businesses in commercial contexts, holding such businesspeople to the terms to which they previously assented and upon which the parties' entire business, operational and financial relationship exists.  Enforcing such agreements represents the essence of public policy, not a derogation of it.

The parties in this case specifically bargained pursuant to an independent contractor relationship (Spellman Lease, ¶ 14), set forth equipment to be provided at the independent contractor's expense (*id.* ¶ 1), related services to be provided by the independent contractor (*id.*), detailed the compensation and other payment to be provided by AEX Group (*id.* ¶ 3), laid out the responsibilities for security service failures and cargo claims (*id.* ¶¶ 6, 9, 11, 13), and expressly agreed that the independent contractor controlled the means and methods of performance (*id.* ¶ 15).

AEX Group consistently relies on the written bargain struck by the independent contractors for federal regulatory and tax reporting purposes.  In short, AEX Group's entire relationship with its contractors is built on the independent contractor nature of the relationship. Wiping away the contractual remedy to which the parties agreed for an unsuccessful challenge to the independent contractor relationship unjustly punishes AEX Group.

Counterclaim Defendants conveniently omit the prejudice to AEX Group when asserting their public policy arguments.  They do so despite the overt disparity in placing AEX Group in a position to rely on the Leases and then, without even pleading for the rescission of the Leases, request that they be ignored.  Nor have Counterclaim Defendants shown that the Leases are unconscionable, an issue on which they would bear the burden of proof.  *See Armstrong v.*

*Accrediting Council for Continuing Educ. & Training*, 832 F. Supp. 419, 432 (D.D.C. 1993) ("To establish unconscionability, *plaintiff must prove* not only that one of the parties lacked a meaningful choice but also that the terms of the contract are unreasonably favorable to the other party.") (emphasis added).   In other words, Counterclaim Defendants ignore the harm to businesses like AEX Group and instead claim that public policy demands Counterclaim Defendants should get both the benefit of the Leases *and* the benefit of employment status (something expressly disclaimed in the Leases).   In other words, Counterclaim Defendants impermissibly seek to use the FLSA as a sword instead of a shield.  *See Wirtz v. Harrigill*, 214 F. Supp. 813, 815 (S.D. Miss. 1963) ("This [FLSA] is designed and intended as a shield to protect the unwary and not as a sword on which to impale an unsuspecting employer . . . .").

Under the rule Counterclaim Defendants propose, a business like AEX Group would be estopped from asserting a counterclaim seeking to enforce the terms of an independent contractor agreement for fear of a retaliation claim under the FLSA.   In this alternate reality, independent contractors would have no disincentive to pursue baseless misclassification claims.   Businesses and courts, however, do stand to lose.   Businesses would be forced to litigate employment status at summary judgment, if not trial, with no prospect of recovering fees under the contract if successful.   Courts would see their dockets fill with such cases with no obvious settlement mechanisms available to encourage prompt resolutions.   Thus, to the extent a ruling against Counterclaim Defendants discourages independent contractors from suing for employee-type benefits, this is a desirable outcome.  *See Wirtz*, 214 F. Supp. at 815.

Moreover, Counterclaim Defendants' suggestion that permitting AEX Group to litigate its indemnity claim will chill participation in the FLSA collective action (assuming Plaintiffs' make the requisite showing) is mere speculation.   There are reasons to believe that this

speculation is unfounded.  Plaintiffs moved for a temporary restraining order on December 16, alleging that AEX Group purportedly retaliated or threatened retaliation against any independent contractor who joined this lawsuit.  (*See* Doc. No. 19-1.)  Despite offering five affidavits, at no point did Plaintiffs offer evidence that AEX Group's counterclaim has prevented or dissuaded potential collective action members from joining in.  Moreover, such allegations are nowhere to be found in the Amended Complaint just filed December 22, 2009.  If the Counterclaim poses such a significant threat that it should be dismissed at this early stage and with prejudice, as Counterclaim Defendants suggest, one might expect to find at least one complaint allegation or factual supporting statement to that effect in the filings Plaintiffs' have since made.  The absence of any such allegations or statements casts significant doubt regarding the speculative threat Counterclaim Defendants claim is posed by AEX Group's counterclaim.[12]

## III.  COUNTERCLAIM DEFENDANTS' CAUSES OF ACTION ALL FALL WITHIN THE SCOPE OF THE INDEMNITY PROVISIONS THAT ARE THE SUBJECT OF AEX GROUP'S COUNTERCLAIM.

Finally, Counterclaim Defendants argue that, even granting that AEX Group's counterclaims are valid, the causes of action asserted in this case do not fall within the scope of the indemnity provisions and, as a result, AEX Group's counterclaim fails to state a claim under Rule 12(b)(6).  (*See* Doc. No. 16-2 at 26-27.)

As noted above, the indemnity provisions in the leases provide that Counterclaim Defendants agree to:

[D]efend, indemnify and hold harmless BROKER from any direct, indirect and consequential loss, damage, fine, expense, including reasonable attorneys' fees,

---

[12] Counterclaims Defendants' reliance on *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465 (D.C. Cir. 1997), and other arbitration-related cases is similarly misplaced.  (Doc. No. 16-2 at 18.)  In *Cole*, as in virtually every other case cited by Counterclaim Defendants, the plaintiffs were admittedly employees subject to the protections of Title VII, the statute there at issue.  Regardless, the *Cole* court *enforced* the arbitration agreement challenged by the plaintiff, even though the agreement required the plaintiff to shoulder certain costs associated with arbitration.  *Id.* at 1482.

> action, claim for injury to persons, including death, and damage to property which BROKER may incur *arising out of or in connection with the operation of the Equipment, CONTRACTOR's obligations under this Agreement, or any breach by CONTRACTOR or its drivers or workers of the terms of this Agreement.* This provision shall remain in full force and effect both during and after the termination of this Agreement.

Spellman Lease ¶ 10 (Doc. No. 9-1 at 4) (emphasis added).  The phrase "arising out of" "reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract *per se*."  *Dowley v. Dewey Ballantine, LLP*, No. 05-622, 2006 U.S. Dist. LEXIS 23304, at *29 (D.D.C. Apr. 26, 2006); *accord Invista N. Am. S.A.R.L. v. Rhodia Polyamide Intermediates S.A.S.*, 503 F.Supp.2d 195, 206 (D.D.C. 2007) ("'arising out of' should be interpreted broadly") (citing *Dowley*).

It is beyond question that Counterclaim Defendants' causes of action have their "origin or genesis" in the Leases.  The Leases create and define the business relationship between AEX Group and Counterclaim Defendants, comprehensively setting forth each party's rights and obligations in connection with the transportation services Counterclaim Defendants agreed to perform on AEX Group's behalf.  Due to the comprehensive nature of these agreements, the substance of each claim asserted by Counterclaim Defendants is addressed by the Leases.  For example, in their Amended Complaint, Counterclaim Defendants assert:  "Named-Plaintiffs and all class and subclass members . . . have been misclassified by Defendant as 'independent contractors.'"  (Doc. No. 23 at 2.)  But the classification of AEX Group's drivers is specifically addressed in the Leases:  "It is expressly understood and agreed that *CONTRACTOR is an independent contractor* for the Equipment and driver services provided pursuant to this Agreement."  Spellman Lease ¶ 14 (Doc. No. 9-1 at 6) (emphasis added).  Indeed the Lease expressly shows that each contractor is vested with the control over his own operation to such a degree as to ensure the independent contractor nature of the relationship.  *Id.* ¶¶ 4-15.

Regardless of the merits of Counterclaim Defendants' argument, it clearly "arises out of" their contractual obligations and relationship with AEX Group.

Counterclaim Defendants also assert:  "Defendant made unlawful deductions from the wages of Named-Plaintiffs . . . ."  (Doc. No. 23 at 18.)  However, the Leases directly address deductions, providing that Counterclaim Defendants are responsible for certain expenses and authorizing AEX Group to take deductions from their compensation for such expenses:

> BROKER shall charge back to CONTRACTOR at the time of the payment or settlement, any expenses BROKER has borne that, under this Agreement, CONTRACTOR is obligated to bear, and as more particularly described in Appendix B.  *Such expenses shall be deducted from the amount of CONTRACTOR's compensation.*

Spellman Lease ¶ 17 (Doc. No. 9-1 at 7) (emphasis added).  Thus, any claim that AEX Group has made impermissible deductions "arises out of" the Leases and Counterclaim Defendants' obligations under the Leases.

Finally, Counterclaim Defendants argue: "Defendant's common practice, policy, or plan of refusing to pay employees for all hours worked and of refusing to pay overtime, in violation of the FLSA." (Doc. No. 23 at 3.)  Again, the Leases explicitly address this topic:

> It is expressly understood and agreed that CONTRACTOR's fees for transportation services rendered shall be as set forth in Appendix B and such fees shall constitute the *total fees for everything furnished*, provided, or done by CONTRACTOR in connection with this Agreement, *including driver's services*.

Spellman Lease ¶ 3 (Doc. No. 9-1 at 2) (emphasis added).  Again, to the extent Counterclaim Defendants' assert entitlement to compensation for time worked, that claim "arises out of" the Leases and thus falls within the broad scope of the indemnity provision.

Consequently, Counterclaim Defendants' claims plainly "arise out of" the Leases and therefore fall within the scope of the indemnity provision.  *See Lozdoski v. City of Chicago*, No. 09-C-658, 2009 U.S. Dist. LEXIS 59019, at *4 (N.D. Ill. July 10, 2009) (finding that the

Plaintiff's FLSA and state law claims fell within the scope of a contract provision requiring any claims "arising out of" the contract to be arbitrated).  Counterclaim Defendants' only response to the plain language and applicability of the provision to the present action is a bold assumption that AEX Group is seeking indemnity for its own actions.  (*See* Doc. No. 16-2 at 25-26.)  To the contrary, AEX Group has expressly disclaimed any right to indemnification to the extent reclassification is achieved.  It is only the failed attempt by independent contractors to reclassify the relationship between the parties that leads to indemnification.  In other words, it is the Counterclaim Defendants' own actions that give rise to AEX Group's indemnification right under the Leases.

## CONCLUSION

Counterclaim Defendants base their entire Motion on two principal (erroneous) assumptions: (1) that AEX Group contractors are employees covered by the FLSA, and (2) that AEX Group is seeking indemnification for its own actions.  Counterclaim Defendants are wrong on both accounts, and the errors render the Motion to be without merit.  For the foregoing reasons, AEX Group respectfully requests that the Court deny Counterclaim Defendants' Motion to Dismiss and permit AEX Group to litigate its indemnity counterclaim in tandem with litigation of Plaintiffs' FSLA and state labor claims.

## REQUEST FOR ORAL HEARING

Pursuant to Local Rule 7(f), AEX Group respectfully requests an oral hearing on Counterclaim Defendants' Motion to Dismiss.

Dated: December 23, 2009                    Respectfully submitted,

                                            /s/A. Jack Finklea
                                            A. Jack Finklea
                                            Robert L. Browning, *Pro Hac Vice*

                                            Attorneys for American Eagle Express, Inc.
                                            d/b/a AEX Group

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2009, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system, and the parties may access this filing through the Court's system.

Jay P. Holland
Brian J. Markovitz
Joseph Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, MD  20770
jholland@jgllaw.com
bmarkovitz@jgllaw.com

                                            /s/A. Jack Finklea
                                            A. Jack Finklea

Robert L. Browning, *Pro Hac Vice*
rbrowning@scopelitis.com
A. Jack Finklea, *Pro Hac Vice*
jfinklea@scopelitis.com
10 West Market Street, Suite 1500
Indianapolis, IN 46204-2968
Tel: 317-492-9289
Fax: 317-687-2414

Kim D. Mann, D.C. Bar No. 81471
kmann@scopelitis.com
1850 M Street, N.W., Suite 280
Washington, DC 20036-5804
Tel: 202-551-9020
Fax: 202-783-9230
H:\Users\bleive\Documents\AEX Group\By Spellman 11976.9\Pleadings\Dismiss memorandum.doc